Richard Martinez on behalf of Martinez-Cobart, may it please the court. Your Honor, in April of this year, the decision rendered by this court of United States v. Brewer, this court noted specifically in her concurrence judgment, you noted, that the undocumented population of the United States is 10.6 million, which represents 4% of the United States. You also noted at the time that in 2010, the number of undocumented in Arizona was 470,000. Mr. Martinez, before we get to the factual background of this case, what really interests me is whether your plaintiff, Mr. Escobar, has standing to bring this action. It seems to me that as a police officer who has sworn to uphold the Constitution of the United States and feels and maybe even thinks that the actions of the governor in signing SB 1070 offend him and put him in a dilemma of either performing his sworn task or violating his conscience and what he believes to be the Constitution of the United States. It is exactly, exactly the position of the City Council of Lake Tahoe in City of Lake Tahoe v. Cal Tahoe Regional Planning Agency. A case we decided in 1980, which found that the plaintiffs in that case did not have standing to press their claims because they didn't have any individual injury. So please address yourself as to the facts in this case as to why Mr. Escobar has an individual injury which allows him to claim Article III standing. Yes, sir. Your Honor, the dismissal in this case from Judge Bolton, we believe, was in there for two reasons. One was that Judge Bolton ignored the fact that Martinez Escobar is a plaintiff not only as a police officer but as an individual, as a Latino, as a Hispanic. What was his individual injury other than the injury which any Latino may have suffered? We know case after case has said that an individual injury must be alleged which is not shared with a class of people. Your Honor, his particularized injury is that which is stated in the complaint, was that he, as all Hispanics, and to complete my one point that I wanted to make, Your Honor, was Hispanics in Arizona, the percent of undocumented is 25% of the Latino population. That's one in four. That's not a fact that's unique to this court but is one that was understood by law enforcement. It was also in this record, Your Honor, that by virtue of SB 1070 We know that taxpayers, which is not one in four, unfortunately perhaps it's just one in two in these days in this country, but taxpayers don't have standing as a tax. I agree, Your Honor, but I think that Martinez Escobar finds himself in the position, as do all Hispanics, that individual Hispanics who would be subject to 1070 and its provisions but for the injunction on the four key provisions that have been enjoined and that has been sustained by this court, would find themselves under the harm of being subject to reasonable suspicion. And Judge Bolton noted that. They would find themselves subject to... You mean Mr. Escobar feels that he has an individual injury because he's under individualized suspicion of being an illegal alien? Yes, sir.  As is every Hispanic in this country. How is that different from everybody else who's Hispanic in Arizona? In Arizona, Your Honor, you have to understand what the courts have yet to, at least the decisions that have been rendered on 1070, have yet to explicitly address is the fact that 1070 in a document, it is a term that is synonymous with race, ethnicity. It is synonymous with... Relentlessly stated to be such by the opponents of 1070. And by Martinez Escobar. We have a case saying, is there a case, Mr. Martinez, which says that self-attributed racial profiling is personal injury? And, Your Honor, the uniqueness of Martinez Escobar as a plaintiff is the fact that as a police officer, he knows the manner in which racial profiling occurs against the undocumented. He knows that it occurs on the basis of skin color. He knows that it occurs on the basis of... 1070 specifically says that he cannot use racial profiling. Is he going to follow the law? Well, the statute may allude to the fact that it should not occur through racial profiling. It is a statute, Your Honor, that you enjoined, and you joined in that decision to enjoin it, that specifically prohibits that provision that would have allowed... So then he doesn't have to enforce the provision. Excuse me? He doesn't have to enforce the provision. It's been enjoined. Well, it has yet... Tell me... It's under a temporary restraining order. Are there any allegations here that he, unlike everybody else who is a Latino officer in Arizona, or even a Latino or Hispanic, has suffered individualized emotional distress, which has caused him personalized injury? And, Your Honor, I would point the court to the fact that whether it be Arab-American Anti-Discrimination Committee v. Stormberg, or if we go to Stormans, or we go to Guantanamo, or Blanton, we did not show that actual harm has yet occurred. What we need to show, Your Honor... Perhaps you didn't have my question. I didn't ask you to cite cases, Mr. Martinez. I'm sorry, Your Honor. What I'm asking you to do is to cite words in your complaint which show an individualized injury to your plaintiff. I believe, Your Honor, to the extent that Judge Bolton certainly interpreted that that did not occur, we believe it did, and we believe, Your Honor, that that is found in the complaint, specifically at paragraphs 55 and 57. Therein was the tab 4. And I can quickly point the court to that. At 55, Your Honor, it provides that all times relevant to the complaint, defendants have announced and made clear their intent to implement and enforce the enacted legislation of the State of Arizona Session Law that places every Hispanic within the State of Arizona at substantial risk of immediate loss of rights guaranteed by the United States Constitution, including unlawful detention, denial of due process, equal protection based solely on their race, Hispanic. All right. Let's take a look at that 55. Where is the individualized harm to Mr. Escobar as Lujan requires us to find? And, Judge Noonan, therein lies one of the issues here on appeal to the extent that this complaint is deficient, that it lacked greater factual plea, then it was denial. Did you seek to amend it in district court? We did not, Your Honor, but the precedence of this district, the precedence of this district, Your Honor, for the last 60 years has been the failure or not seeking to amend the complaint is of no significance. Whether we look to Tinker, if we look to the decision, Your Honor, in Lopez, which is an impact decision of this court, says specifically that the fact that an amendment was not sought is not despotic or significant. And in that point, Your Honor, we have Lopez v. Smith, Doe v. United States v. District of Arizona. You're not arguing in a convincing manner when you give me the strength side. Okay. Now, if what you're asking is for this court to remand the case with instructions that the district court allow you to amend your complaint, is that what you're asking? Yes, sir. That is specifically what we are asking for. Let me ask you, what facts you would allege of individualized harm to Officer Escobar if you were allowed to amend? If we were allowed to amend, Your Honor, we believe we have submitted a very detailed factual complaint, we would add those facts that have occurred. Don't speak in generalities. Yes, I will speak to subtractions. Nor in platitudes. Tell me what facts you would allege. Has he been put in a hospital because of SB 1070? No, but what he would allege, Your Honor, is the fact that he himself, while off-duty as a Hispanic in Tucson, Arizona, has been subjected to stops. Has he been unable to work because of 1070? No, he's been subjected to stops that he characterized and believes were the product of racial profiling. Has he applied racial profiling and been sued by somebody because of racial profiling? No, Your Honor. What harm has Mr. Escobar had visited upon him because of SB 1070? The provisions of SB 1070, Your Honor, are twofold. One, as I said, is that he would specifically allege that he's been subjected to a stop that he believes specifically is the product of racial profiling in 1070. Number two, Your Honor, he, like every Hispanic in his situation, would be but for, Your Honor, we have the situation where we have enjoined, you have enjoined those provisions that were considered most offensive under the theory of preemption with respect to 1070. But for you enjoining those four provisions, Your Honor, Hispanics in Arizona, Latinos in Arizona, would be subjected to those four provisions, and that would be the particularized harm to which Martinez Escobar would find himself subjected. But so long as those provisions have been enjoined and they're not being enforced, Escobar, whatever his injury is, has not suffered it yet. That's correct, Your Honor. I agree with that. But I would offer to the court that he not yet have been subjected to that. If the Supreme Court of the United States rejects the petition for certiorari, which I believe has been filed or will be filed, then they'll never be enforced, and Mr. Escobar will never be injured. Well, Your Honor, I believe what's on petition for cert is the temporary restraining order, the preliminary injunction, not a ruling, a dispositive ruling on the merits. And I agree that the practical effect of that would be that of the likelihood on the merits that Judge Bolton will likely rule, and maybe he'll work with some of the Supreme Court again, the fact as to whether or not preemption applies. The ruling, Mr. Martinez, that the statute SB 1070 was preempted and violative of the Supremacy Clause of the United States Constitution, whether entered as a preliminary injunction or as a final injunction, is of no difference. It's just the law of the Ninth Circuit. And, Your Honor, the fact... Last chance. The fact that... Give me one factual allegation of particularized harm to Escobar, which is not that he might have to violate the Constitution if 1070 is no longer enjoined, or that he feels bad as a member of the Hispanic community because 1070 is lurking in the background. Your Honor, it's not a question about feeling bad, and I would agree that that does not provide standing. This is a case where he is within the class of individuals that is subject to the constitutional violations that flow from 1070. Thank you. I'd like to reserve one minute, if I could, for rebuttal, Your Honor. Let's hear from Governor Brewer. Governor Brewer. Good morning. May it please the Court. I'm John Palma, here on behalf of Governor Brewer. Did you argue the 1070 case? Yes, sir. I thought I recognized you. You know, obviously the key is injury, in fact, to the complaining party. The plaintiff has come in with two different theories. Actually, he's only come in with one theory in his complaint, in his first amended complaint, and that was that he had the dilemma to which the Tahoe stuff, like Tahoe case, is addressed. In the response to the motion to dismiss, he started arguing the theory that as just a Hispanic who is bilingual, he was harmed. And there were no facts. The theory was never pled in either of the complaints. There were no facts pled in either of the complaints. The theory was first brought up in the response to the motion to dismiss. Why shouldn't we remand and allow him to amend? Well, a couple of reasons. One is there's some cases, one I'm sure you're very familiar with, which is Reyes-Hostebell, and then there's Alaska v. United States that basically say that the failure to request leave to amend waived that opportunity. Secondly, and you've been exploring it here yourself, everything that has been written and said to date in either the district court or this court, there's nothing in there that sets forth any thought of imminent injury to the complaining party. And the line of cases, which includes Stacklin v. Hart-Bruin, which basically recites the uniform position in this district and in this circuit and elsewhere, that there's no right to amend where to amend would be futile or would result in dismissal of the amended complaint. Even with, I know you were talking to him about the fact that 1070 has been enjoined, but even if you talk about 1070 not being enjoined, put 1070 back in full force into effect. The individual has not come up with any individualized injuries. In the first place, he complains about both sections three and six, both of which apply only to illegal aliens rather than citizens. He's a citizen. The other item he wanted to talk about was two things. He complains that if he's to discharge his duty under 1070, if it were back and forth, he would have to detain people based on their race, not on their alienage. What do you say to that? I didn't quite understand that, Your Honor. I think he claims that he would have to violate the Constitution if 1070 were enforced because he would have to enforce 1070 fully. He'd have to detain people based on their dusky looks rather than their alienage. Well, that's in his capacity as a police officer, obviously, and that's his official capacity, and that's exactly what South Lake Tahoe addresses and basically says if we allow that as standing, their own concern about whether they're going to do something unconstitutional, that that converts every public official who has an obligation to enforce a statute into a potential litigant. They said no, and that case has been recited in Thomas v. Mundell here in this circuit in 2009 where it was referred to as well settled. And then he doesn't have to do anything in his capacity as an individual. He has simply no particularized injury. He can't allege it. I mean, the only thing he could get to was 2B and the idea that he could be arrested. He has two hurdles there. He's talking about the Tucson police arresting him. This is the force he's on, but his two hurdles would have to be, first, that he's going to show that there are circumstances that would lead or are likely to lead to him being stopped, detained, or arrested. Well, suppose he were to allege that the conflict which he saw between his sworn duty as a policeman and the unconstitutionality of SB 1070 was so extreme that he suffered mental injuries and was unable to get out of bed in the morning and go to work. Would that be sufficient? No, I don't think so because, again, South Lake Tahoe says that anybody can come along and allege that as a public official. Their obligation is their own. I don't remember any of the city councilors at Lake Tahoe saying that this conflict was so grave that they were bedridden as a result. I mean, that would be an injury, wouldn't it, if he said, I can't get out of bed, I'm just so conflicted? He's not in a position to raise that in his official capacity. If he had some obligations to do as a personal citizen, and that's what the distinction, again, was made in the Thomas Bundell case, is the county prosecutor was raising the issue in his official capacity rather than in his personal capacity. And in his official capacity, he does not have standing to raise that. The court went through that pretty clearly, both for the usual standing thing of injury in fact, but also they talked about the prudential concerns about who they're going to let come into court and bring these cases. And, again, the point they made is if every official who's charged with enforcing laws was in a position to assert standing, that all of them would become potential litigants. No, all of them have to allege that as a result of their heartfelt sense of duty and their disgust with the law, they were all in bed and couldn't get out of bed and were ill. Wouldn't that be a particularized injury? I don't think that's a distinction under anything I can see in that particular case. That's not individualized injury in a personal situation. No, in any case, he didn't allege it. Sir? He certainly didn't allege it in 55 or 57. He certainly did not allege a particularized injury based on emotional distress in 55 or 57. I don't think that would get him by standing. I don't think there's anything that can get him by standing. In the first place, if he enforces the law the way it is, it prohibits racial profiling and it tells you that you have to respect the civil rights of all citizens, that you have to do it in conformance with the United States immigration laws and you respect the privileges and immunities of all citizens. The law specifically states that. There are some broad allegations that he makes about what the law is going to do. The fact is that isn't what the law says, and there's a presumption that the officials are going to enforce the law the way it's written and in a constitutional manner. Mr. Buolma, in paragraph 57, he says that he has voiced his opinions that this is racial bias and impermissible and has been confronted by law enforcement officers for expressing such beliefs. Now, isn't that an individualized injury? He's been confronted by other officers? Those are the conduct of third parties. That is the conduct of third parties, and that does not give him standing to contest the statute. The statute does not impact him. The fact that he wants to express an opinion and somebody else wants to tell him he shouldn't is not a violation, does not give him standing to raise the constitutionality of the statute. It may give him a grievance with respect to the people who are shutting him down, but that's the conduct of a third party that is not built into the statute. Well, but if he's been confronted by law enforcement officers for expressing such beliefs and that causes him some mental distress, you still say that was not an individualized injury? Not in his official capacity, if that's what he's talking about, and that's what he is. He's talking about his position as a police officer, and that's exactly what he has put, his position as a police officer. And that's where he's expressing his opinion, and his fellow police officers apparently, according to that, have said that's not a good idea as a police officer. But that's it again, in his official capacity. If anybody, if in his citizen capacity. If a bus driver gets hit by an automobile while he's in his official capacity, he can't claim that the municipal railway was at fault because they didn't protect him adequately, as well as the automobile didn't protect him adequately. I don't follow you. What does his official capacity have to do if he alleges he has voiced his opinion? That's not his opinion as an officer. He has voiced his opinion of such in the workplace and being confronted by law enforcement officers for expressing such beliefs. Because I think there's a whole series of cases out there, and I think some have been cited, and I know the judge has cited them in this and a couple of other cases. And in one of those cases, this circuit dismissed as frivolous. Confrontation is not injury. Is that what you're saying? Or is it because he's voicing his views learned as a police officer? I don't follow the official capacity issue. Well, I take the official capacity from South Lake Tahoe and from Thomas v. Bundell. They make the very clear distinction about if you're doing it in an official capacity, then you do not have standing. If you're talking about him exercising or, you know, talking about the statute and expressing dissatisfaction with it as a Hispanic American citizen, he has no injury in fact. That, as a result of the statute, you don't have standing to contest the statute. The statute isn't what's giving him the problem. The thing that's giving him the problem are the people shutting him down from talking about the statute. Those are two entirely different things. I don't think he's alleging he's been shut down by talking about the statute. He's been confronted. I mean, he's been told he's wrong, and that may have caused him some emotional distress. Well, if I complain about taxes and other people tell me I shouldn't complain about taxes, does that give me standing to try to declare the tax code unconstitutional? I mean, I may have some mental distress about that. You may find that you make better progress when you answer questions rather than when you pose them. I'm sorry. I didn't realize I wasn't answering. All right. Anything else you want to add to that? I'd be happy to answer any questions. Okay. No questions. Mr. Martinez, you want a couple of minutes? Yes, sir. Your Honor, with respect to the reference to Pastavera, I would contend that that is an understatement. For some reason, I can't understand a word you just said. Maybe it's because your head is down. I don't know. But start so that we can hear you. I apologize, Your Honor. If we don't understand you, you waste your time. With respect to the reference to Pastavera, I would offer to the Court that Lopez v. Smith is a controlling authority with respect to that proposition. With respect to the Court's questioning about particularized harm, I would also point to the fact that I do not believe that this officer, Escobar, finds himself like the council member in South Lake Tahoe, but that, in fact, as a police officer, he suffers specific harm also, individual harm, and that, one, 1070, Your Honor, provides the basis for him to be sued by citizens of the State of Arizona who are not enforcing 1070. That has not occurred, Your Honor. That has not occurred. But that does provide for that provision. I don't believe that in order to raise that claim, though, he need have been sued. Number two is that on ---- Yes, but that provision of the Act has been enjoined, right? The provision with respect to him being ---- no, it has not. What has been enjoined are the four provisions, Your Honor, with respect to enforcement. There are substantial portions of the statute, and we've attached Judge Bolton's order to our pleadings. You will see that she lays out very specifically. There's only four provisions in the entire statute that she enjoined, and she did not enjoin the lawsuit provision. With respect to also, he is subject to, if he does not carry out 1070 to the satisfaction of the Arizona law enforcement, which licenses him, which certifies him as a police officer, then he is subject to loss of licensure. So he's not like the council member who can say that they have just a concern. He is actually at risk in terms of his career. Has there been any administrative action taken against him as a police officer? Not against him, Your Honor, and I'm not aware of any having occurred to this State of Arizona. Okay. Thank you. Thank you. Thank you, Mr. Martinez. And with that, we'll mark Escobar v. Brewer under submission. And that takes care of our calendar for today. Thank you very much. The Court stands adjourned.
judges: Farris, Noonan, Bea